## CAMPBELL ET AL. VS. HOPKINS ET AL.

A testator devised real estate and negroes to be divided between the defendant and his other children: upon a settlement and division between the defendant and one of the devisees, acting for himself and as agent and guardian for the others, the defendant claimed two of the negroes as a gift from the testator: the proof as to the gift, was in direct conflict: and, to settle the matter, it was proposed and agreed to, that a negro belonging to the defendant should be substituted in place of the two negroes in dispute: HELD, That the chancellor correctly decided that the settlement and division ought not to be disturbed.

In such case, without proof to the contrary, the court might well presume that the negro of the defendant, thus substituted, was equivalent in value to the two negroes in dispute. But if not of equal value, it was of some value, and the bill for a division of the two negroes was properly dismissed, because the complainants made no offer to restore to the defendant the value of his negro substituted in the former division.

*Appeal from Sevier Circuit Court in Chancery.*

Hon. SHELTON WATSON, Circuit Judge.

52      CASES IN THE SUPREME COURT

Campbell et al. vs. Hopkins et al.      · [JANUARY

CURRAN & GALLAGHER, for the appellants.

PIKE & CUMMINS, for the appellees.

Mr. Chief Justice WATKINS delivered the opinion of the Court.

The controversy in this suit, arises out of the will of William Cook, of Virginia, and may be sufficiently understood without any detail of the pleadings. The testator directed a portion of his estate, including a number of negroes on a plantation in Arkansas, to be equally divided among his six youngest children, Frances A., Mildred E., (wife of Francis Hopkins,) Sarah E., (wife of William F. Campbell,) Edwin R., James O., and Laura J. Cook; the two last named being minors when the suit was instituted, subject, however, to certain deductions specified by the testator; that is to say, deducting eighteen hundred dollars from Mildred E. Hopkins' share, expressed to be for advances heretofore made to her, including the negro woman given her in March, 1845," and similar deductions, applicable to some of the other legatees, were also specified. The farm and negroes in this State, were in charge of the defendant, Hopkins; and, among these slaves, were two negro children, *Jim* and *Bet*, who are the subjects of the present litigation. It is admitted that Jim and Bet are mentioned or referred to in the testator's will, as being among those negroes whom he wished to be brought into the division before mentioned, but they were claimed by Hopkins, upon the ground that the testator had given them to his daughter Mildred, the wife of Hopkins, in order to make her advancement equal to what he had given to some of his other children. There is, throughout the entire record of this case, a singular omission of the dates of material transactions relied on by the parties, and which ought to conduce to explain them. It appears, however, that the will was probated in Virginia, in May, 1847, and the executors renouncing, Edwin R. Cook became administrator with the will annexed; and some time afterwards, in that capacity, and acting also for himself; and as guardian for the minors, and having authority from Campbell and

wife, he came out to Arkansas, in order to have a settlement with Hopkins, and make division of the property. A division was accordingly made, by three disinterested persons in the neighborhood, with the fairness of which Edwin R. Cook expressed himself satisfied. He now says that he was only content with the division so far as it went, and that while he had authority to act for the heirs named in making the division, he was not authorized to relinquish any part of their just claims. He insisted, at the time, that Jim and Bet were part of the property to be divided; and the sole object of the present suit, brought by five of the legatees against Hopkins, is to have a division of those two negroes. Upon the whole case, it may be considered doubtful whether Hopkins succeeded in establishing a gift of Jim and Bet, to his wife by her father, as alleged in their answers. The testimony on that point, is in direct conflict; and supposing that he had failed in proving a clear title to these negroes, independent of the will, the law, as contended for the appellants, might be conceded, that he could not claim under, and at the same time in opposition, to the will.

But it does clearly appear, that pending the negotiation about the division, Hopkins asserted his right to Jim and Bet as part of the property which had been given to his wife by way of advancement from her father, and it is also proved that Hopkins finally agreed that Nice, a negro woman of his own, should be brought into the division, and she was accordingly allotted to him for what we must suppose was her estimated value, as part of the share coming to him. No question is made but that Nice was the property of Hopkins, she having been given by William Cook to his daughter Mildred, and included in the advancement of eighteen hundred dollars, which was to be deducted from her share. Hopkins and wife say, in their answer, that Nice was substituted as one of the slaves to be apportioned among the legatees in lieu of Jim and Bet, at the suggestion of Edwin R. Cook, that it would be fair and equitable, to all concerned, for them to do so, and that they consented to this arrangement for the sake of peace and harmony. This statement is also supported

54 CASES IN THE SUPREME COURT

Campbell et al. vs. Hopkins et al. [January

by the preponderance of the competent evidence in the cause: and even if it were not, and Edwin R. Cook had no authority to agree to the substitution so as to bind the others for whom he was acting, what he did, was certainly binding on himself as one of the parties complainant. The value of Nice is no where alleged or shown, and the reasonable presumption might be that she was equivalent in value to Jim and Bet. But if not equal, she must have been of some value, and which the bill makes no offer to restore to Hopkins. For this reason alone, the complaint must have been dismissed, though perhaps without prejudice to any right of an infant, upon the like principle adjudged in *Fenno vs. Coulter*, at July Term, 1853, where an attempt was made to set aside a judicial sale for mistake and irregularity, without refunding to the purchaser the money paid by him, and of which the defendant, in the execution, had received the benefit.

It is evident from the will, that the testator had an earnest desire that there should be no controversy or litigation about the property among his children. He directed that, in the event of any disagreement, it should be settled by the determination of three disinterested lawyers, to be selected by his executors; and he undertook to declare a forfeiture of his share by any legatee who would refuse to abide such award. In another clause, he says, "I will, and desire, that my executors should not be trammeled or confined strictly to my said will in any small matter or particular, where it is obviously the best interest of my children to deviate therefrom in a small degree in the exercise of a sound discretion." It may have been in obedience to these wishes of the testator, that James O. Cook, who came of age pending the suit, appeared in court and disclaimed all interest, declaring that his name had been used as a complainant, without his knowledge or consent. While this may not be clearly a case of a family arrangement, and compromise to be adhered to for the suppression of disreputable strife, there is enough of bitterness and contradiction in the record to justify the sensible conclusion of the chancellor who heard the cause, that the settlement and division as made, ought not to be disturbed. Decree affirmed.